J-S29037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVAUGHN HALSEL | : | |
| | : | |
| Appellant | : | No. 1360 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 6, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0004280-2023

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: October 2, 2025**

Appellant, Devaughn Halsel, appeals from the judgment of sentence of two years' probation, plus a $1,500 fine and court costs, imposed after he was found guilty following a non-jury trial of various offenses relating to cruelty to animals. On appeal, Appellant solely challenges the weight of the evidence to sustain his convictions. After careful review, we affirm.

The trial court summarized the pertinent facts of this case, as follows:

This case revolves around [Appellant's] ownership of seven (7) dogs, four (4) of which he kept at 383 Flowers Avenue in the City of Pittsburgh, which is a residence that he was remodeling. He resided at another residence in the West Mifflin section of Allegheny County.

The Commonwealth's case consisted of five (5) stipulated-to Exhibits:

(1) Search Warrant — Seizure of two (2) of the dogs (She[-]She and Slime);

(2) Criminal Complaint — Including the Affidavit of Officer Angela Fry, who is with Humane Animal Rescue of Pittsburgh, wherein she indicated, *inter alia*, that on December 23, 2022[,] at 8:33 am, she observed [Appellant's] dogs outside tethered with heavy chains, which were frozen to the ground, on a day when the temperature was 3[ degrees Fahrenheit];

(3) Veterinary Records for the dogs;

(4) Report from Amy Kalinauskas, a staff veterinarian at Humane Animal Rescue of Pittsburgh, which stated that She[-]She and Slime had fractured teeth, with exposed dental pulp, which would cause them prolonged, serious pain, an inability to eat properly, and the risk of infection, along with skin lesions, hair loss, abrasions, and scarring; and

(5) [the] Preliminary Hearing Transcript from May 31, 2023, at which Agent Fry and Dr. Kalinauskas both testified and were cross-examined. (N.T.[ Trial,] 05/06/24, [at] 5-10).

The defense presented the testimony of [Appellant], who stated that his dogs were housed at 383 Flowers Avenue, which was a residence that he was remodeling. On November 20, 2022, he received a call from Humane Animal Rescue indicating all four (4) of his dogs had been seized from this residence. [Appellant] went to the facility three (3) days later and spoke to the veterinarian, who advised him that She[-]She and Slime needed dental care due to fractured teeth. She gave him a three (3) week supply of antibiotics and pain medication for the dogs, and he took them home. After being informed that the veterinarian at Humane Animal Rescue would not perform the dental work unless she was also permitted to spay/neuter the dogs, he made an appointment for January 6, 2023[,] at another clinic. ([***Id.*** at] 11-18).

[Appellant] further testified that on December 22, 2022, he fed and walked the dogs, then left on a trip as a truck driver for his employer. When he left the dogs, the outside temperature was 40 [degrees Fahrenheit]. His planned 7-hour trip was delayed, and he did not return until about 12:00 pm the following day. [Appellant] admitted, on cross-examination, that the temperature overnight dropped to -5 [degrees Fahrenheit] and it had snowed. ([***Id.*** at] 19-23, 36-39).

Trial Court Opinion (TCO), 1/6/25, at 2-3.

Based on this evidence, the court convicted Appellant of the following 12 summary offenses:

Failure to provide the basic needs of an animal — sustenance and water, 18 Pa.C.S.[] § 5532(a)(1) (4 counts)[;] Failure to provide the basic needs of an animal — access to clean and necessary shelter and protection from weather, 18 Pa.C.S.[] § 5532(a)(2) (4 counts)[;] Failure to provide the basic needs of an animal — veterinary care, 18 Pa.C.S.[] § 5532(a)(3) (2 counts)[;] and Cruelty to Animals, 18 Pa.C.S.[] § 5533 (2 counts).

*Id.* at 1. On June 6, 2024, Appellant was sentenced to the aggregate term of probation stated *supra*. He filed a timely post-sentence motion challenging, *inter alia*, the weight of the evidence to sustain his convictions under section 5532(a)(3) for failing to provide veterinary care. On October 10, 2024, the court issued an order denying Appellant's motion.

Appellant filed a timely notice of appeal, and he and the court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states one issue for our review: "Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion requesting a new trial where [Appellant's] convictions for neglect of animals – failure to provide veterinary care were against the weight of the evidence?" Appellant's Brief at 8 (unnecessary capitalization and emphasis omitted).

We begin by recognizing that:

A motion seeking a new trial based on the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal

- 3 -

weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a *review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Person*, 325 A.3d 823, 836 (Pa. Super. 2024), *appeal denied*, 334 A.3d 1283 (Pa. 2025) (some formatting altered) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations and quotation marks omitted) (emphasis in the original)).

Here, Appellant claims that the trial court's convicting him of failing to provide veterinary care for his dogs was contrary to the weight of the evidence. Essentially, Appellant claims that his testimony and dogs' veterinary records showed that in late November of 2022, he was given over a months' worth of pain medication and antibiotics to treat the dogs' broken teeth until he could make "a dental appointment with a different veterinary clinic." Appellant's Brief at 23. Appellant points out that the veterinarian, Dr. Kalinauskas, testified that when the dogs were seen again in December of

2022, they had gained weight and showed no signs of infection in their teeth, thus demonstrating that he had been giving them the medicine. *Id.* at 21-22 (citing N.T. Trial at 15; N.T. Preliminary Hearing, 5/31/23, at 45-46).[1] Appellant contends that, nevertheless,

> [i]n convicting [Appellant], the trial court relied heavily on the testimony of Officer Fry that only three weeks of medication was provided to him for [the dogs] in November 2022. The trial court placed too much importance on the three-week time frame, especially where [Appellant] credibly testified that he was actually given a month's worth of medication, and his testimony is supported by both of the dogs' medical histories from … Humane Animal Rescue.

*Id.* at 22-23. Appellant further avers that "he credibly explained" at trial "that he tried to get an appointment with his regular veterinarian as well as at other clinics, but nothing was available in December because it was the holiday season." *Id.* at 22. "[D]espite such difficulties, [he] obtained the earliest appointment possible" for the dogs, which was January 6, 2023. *Id.*

Appellant's argument is unconvincing. First, the trial court did not 'rely heavily' on Officer Fry's testimony that Appellant was given three weeks of medicine for the dogs; instead, the court only cited in its *factual recitation* that Appellant was given "a three (3) week supply of antibiotics and pain medication for the dogs…." TCO at 3. Thus, this argument fails.

Second, even if we accepted Appellant's argument that he received a one-month supply of medicine, the record supports the court's statement in

---

[1] We reiterate that, at trial, the parties stipulated to the admission of the preliminary hearing transcript as evidence at trial. *See* N.T. Trial at 5-6.

its analysis that Appellant's appointment for the dogs' teeth was made "well past when the prescribed pain medication and antibiotics would have been finished." TCO at 5. If Appellant received a thirty-day supply of medicine on or about November 20, 2022, he would have run out on or about December 20, 2022. The dogs' veterinary appointment was not until approximately **two weeks later**, on January 6, 2023. It was not an abuse of discretion for the court to consider this 'well past' Appellant's running out of medicine for the dogs, even had he gotten a thirty-day supply.

Moreover, Appellant's focus on the amount of medication he was provided for the dogs, and whether the court believed that he gave it to them, misses the mark, as it is apparent that the **court's focus** was on the fact that Appellant did not promptly **make an appointment** to have the dogs' teeth fixed. Notably, the court stressed that "in November 2022, [Appellant] was instructed that She[-]She and Slime **needed dental care, and he was given three (3) weeks to have it done**." **Id.** at 4 (emphasis added). Specifically, Officer Fry testified that Humane Animal Rescue offered to treat the dogs' broken teeth in November of 2022, if Appellant would "permit [them] to spay [or] neuter the dogs, … free of charge…." N.T. Preliminary Hearing at 9-10. Appellant refused. **Id.** at 10. Accordingly, Officer Fry "informed [Appellant] that he had three weeks to seek veterinary care elsewhere … for the teeth." **Id.** at 11.

The trial court explained that, despite Officer Fry's directive, when the dogs returned to the veterinarian in December of 2022, the doctor "discovered

that their fractured teeth, with exposed dental pulp, still had not been repaired, which was causing both dogs to suffer prolonged, serious pain and risk of infection." TCO at 4 (citing N.T. Preliminary Hearing at 48 (Dr. Kalinauskas's testifying that these types of injuries would mean the "dog's mouth is always in pain, when they are eating or when they are simply existing, breathing, because air goes straight [in] and hits that nerve. That's going to be painful to them.")). Ultimately, the court stressed:

> In announcing the verdict on the record on June 6, 2024, the [c]ourt specifically found the [Appellant's] testimony [that he was] "… a loving, caring dog owner" to be completely incredible based upon the conditions in which the dogs were living and their numerous health issues (*e.g.*, as to She-She, fractured teeth, patchy hair loss, moist lesions, abrasions, [a] chunk of lip missing, scars all over [the] head, face, and front legs, etc. As to Slime, multiple fractured teeth, scarring on [the] head, face, neck, chest and shoulders, scabbed abrasions on [the] top of [the] head and left side of [the] face, discharge from previous abscess on [the] left side of [the] face and [a] wound between [the] eyes, ulcerated lesions at [the] tail base, abscess with [a] puncture on [the] left side of [the] muzzle, etc.). Even though [Appellant] stated that he had made an appointment for the dogs to receive dental care, it was six (6) weeks after their initial seizure and well past when the prescribed pain medication and antibiotics would have been finished. Accordingly, the evidence was not vague or tenuous in any fashion; rather, as stated above, it was overwhelming.

*Id.* at 5. Clearly, the court convicted Appellant of failure to provide veterinary care because he waited **six weeks** to schedule a veterinary appointment for his dogs' painful teeth injuries, rather than doing so within three weeks as instructed by Officer Fry. We discern no abuse of discretion in the court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/02/2025